IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI
KANSAS CITY DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| LAKESHORE FARMS, INC., ) | Case No 18-50077-btf11 |
| ) | Chapter 11 |
| Debtor. ) | |
| ) | |

## MOTION TO APPROVE SETTLEMENT
## AND FOR EXPEDITED HEARING

Comes now Creditor, Great Western Bank, the Debtor Lakeshore Farms, Inc., and Jonathan Russell and Sarah Russell, individually, and move this Honorable Court to approve the attached Settlement on the following grounds:

1. The Debtor, its President Jonathan Russell, Great Western Bank, and Manville Farms have been involved in litigation in the Circuit Court of Holt County, Missouri, in Case No. 17HO-CC0050.

2. The parties to the state court litigation reached a settlement agreement prior to the filing of this Bankruptcy Case which was admitted into evidence at the hearing on March 7, 2018.

3. The settlement agreement was not consummated because Frontier Bank would not consent to its terms.

4. The settlement agreement involves only assets owned by Mr. Russell individually and the Debtor Lakeshore Farms, Inc. does not have any interest in the assets subject to the Settlement.

5. The settlement would remove Great Western Bank and Manville Farms as a creditor in this case by resolving their claims against the Debtor.

6. Frontier Bank has now agreed to the settlement with some changes, with the revised settlement agreement.  The most important terms of the settlement are:

    (a) Mr. and Mrs. Russell will convey a farm owned by them of approximately 150 acres located near Forbes, Missouri to Great Western Bank;

    (b) Mr. and Mrs. Russell will pay $250,000.00 to Great Western Bank for release of the lien on an improved property known as the Grain Bin Site. It is anticipated that the Russells will make this payment by sale of this property.

(c) As to the pending 2013 crop insurance claim of Jonathan Russell personally, with a value of approximately $1,300,000.00, which is subject to alleged liens of Great Western Bank, Manville Farms, and Frontier Bank, after payment of legal fees on the litigation involving such claim, Great Western Bank will receive 85% of the net proceeds and Frontier Bank will receive 15% of the net proceeds.

(d) The Debtor Lakeshore Farms, Inc., Mr. and Mrs. Russell, and Frontier Bank are releasing all claims, if any, against Great Western Bank and Manville Farms and, Great Western Bank and Manville Farms are releasing all claims, if any, against Lakeshore Farms, Inc., Mr. and Mrs. Russell and Frontier Bank.

(e) Mr. and Mrs. Russell will receive one-half ($12,500.00) of an injunction bond posted by them in the case pending in Holt County, Missouri and Great Western Bank will receive one-half ($12,500.00) of such bond.

A copy of the Settlement Agreement (without exhibits) is attached, and Exhibits to the Settlement Agreement are available upon request from attorney Robert Cowherd.

7. The approval of the Settlement Agreement is in the best interest of the Estate and the parties to the Settlement.

8. Due to all of the above mentioned facts, the parties hereto further request that this Motion be set for an expedited hearing.

WHEREFORE, Great Western Bank, creditor, Lakeshore Farms, Inc., debtor, and Jonathan and Sarah Russell, individually, move this Court to approve the revised Settlement; that this Court set this matter for an expedited hearing; and for such other orders as the Court deems proper.

Respectfully submitted March 9, 2018.

                      CHAPMAN AND COWHERD, P.C.

                      BY /s/ Robert Cowherd
                            Robert Cowherd - #24902
                            903 Jackson - P.O. Box 228
                            Chillicothe, MO  64601
                            Telephone: 660/646-0627
                            Telefax: 660/646-1105
                            E-mail: rcowherd@ccttlaw.com
                      ATTORNEY FOR CREDITOR,
                      GREAT WESTERN BANK.

LAKESHORE FARMS, INC.
BY ITS ATTORNEY:

EVANS & MULLINIX, P.A.

BY: /s/ Joanne B. Stutz
    Joanne B. Stutz KS #12365; MO #30820
    7225 Renner Road – Suite 200
    Shawnee KS 66217
    (913) 962-8700
    Fax: (913) 962-8701
    jstutz@emlawkc.com


JONATHAN RUSSELL
SARAH RUSSELL
BY THEIR ATTORNEY:

STANTON & REDLINGSHAFER, L.L.C.

BY: /s/ Janice E. Stanton
    Janice E. Stanton #34055
    104 West 9th Street – Suite 303
    Kansas City MO 64105
    (816) 421-7770
    Fax: (816) 421-7773
    Janice.stanton@sbcglobal.net


CERTIFICATE OF SERVICE
The undersigned certifies that a copy of the foregoing document was served, in addition to the parties notified by the U.S. Bankruptcy Court's electronic notification, including the U.S. Trustee, upon all creditors and other parties in interest per the Court's mailing matrix, via U.S. Express Expedited Mail, postage prepaid, this 9th day of March, 2018.


                              /s/ Robert Cowherd
                              Robert Cowherd

# SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (the "**Agreement**") is made as of March 9, 2018 (the "**Effective Date**"), by and among Jonathan L. Russell, Sarah L. Russell and Lakeshore Farms, Inc. (collectively, "**Russell**"), Manville Farms, John Manville, John Manville Farms, Inc., Bethany Grain, LLC, Ridgeway Grain, LLC and Cainsville Grain, LLC (collectively, "**Manville**") and Great Western Bank ("**GWB**") and Frontier Bank ("**Frontier**"). Russell, Manville, GWB, and Frontier are hereinafter collectively referred to as the "**Parties**" and each individually as a "**Party**."

## RECITALS

The following recitals are a material part of this Agreement.

A. On September 22, 2017, Russell commenced certain litigation (the "**Litigation**") against Manville in the Circuit Court of Holt County, Missouri, Case No. 17HO-CC0050 asserting certain claims for breach of contract, an accounting and wrongful foreclosure. GWB is an intervening defendant in the Litigation. Manville has asserted certain claims against Russell in the Litigation (the "**Counterclaims**") alleging that Russell is indebted to Manville in connection with certain loan transactions by and between Manville and Russell related to their respective farming operations and for foreclosure of certain real and personal property that Manville alleges secures the amounts owed to Manville by Russell.

B. GWB asserts claims against Russell related to certain guaranty agreements (the "**Guaranty Agreements**") executed by Russell in connection with certain loan transactions by and between GWB and Manville. GWB has not, however, filed any claims in the Litigation. In addition, GWB is an assignee of Manville with respect to certain claims asserted in connection with the Counterclaim.

C. As of the Effective Date, Russell is the owner of following real estate: (i) that certain real property located in Holt County, Missouri, legally described on **Exhibit A** attached hereto and commonly referred to as the Forbes Farm (the "**Forbes Farm**"); (ii) that certain real property located in Holt County, Missouri, legally described on **Exhibit B** attached hereto and commonly referred to as the Bin Site (the "**Bin Site**"); and (iii) that certain real property located in Holt County, Missouri, legally described on **Exhibit C** attached hereto and commonly referred to as the Russell home and shop (the "**Russell Property**").

D. As of the Effective Date, Russell is also the owner and holder of a certain crop insurance claim (the "**Claim**") related to Russell's farming operations in 2013. The Claim is currently the subject of certain litigation filed in the United States District Court for the Western District of Missouri and currently pending before the Eighth Circuit Court of Appeals (the "**Claim Litigation**").

E. Manville asserts a security interest in the Forbes Farm, the Bin Site and the Russell Property (collectively, the "**Property**"). GWB may also assert an interest in the Property

1

61476862.5

through an assignment from Manville or in connection with the Guaranty Agreements. Manville and GWB also assert an interest in the Claim.

F. Frontier also asserts an interest in come of the Property and in the Claim.

G. As of the Effective Date, Manville is indebted to GFG Ag Services, LLC or one of its related entities (referred to herein as "**Gage**") in the amount of $117,163.89 in connection with certain inventory supplied by Gage in connection with the farming operations of Manville (the "**Gage Claim**"). Gage has made demand on Manville and Russell for payment of the Gage Claim.

H. As of the Effective Date, Manville is the owner and holder of a certain claim (the "**Syngenta Claim**") asserted against Syngenta that relates to certain damages sustained by Manville and Russell in connection with their farming operations. The Syngenta Claim includes damages to land owned or leased and farmed by Manville (the "**Manville Syngenta Claim**") and damages to land owned or leased by Manville but farmed by Russell (the "**Russell Syngenta Claim**").

I. The Parties have reached an agreement with respect to the Litigation and all other claims and rights asserted against each other, all as and subject to the terms and conditions further provided for in this Agreement.

NOW, THEREFORE, in consideration of the premises and mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. The Recitals set forth above are true and accurate, are a material part of this Agreement, and are hereby incorporated by reference, and the Parties are entitled to rely thereon.

2. On the Closing Date (as hereinafter defined), Russell shall transfer to GWB title to the Forbes Farm pursuant to a general warranty deed (the "**Warranty Deed**") in the same form and substance as is attached hereto as **Exhibit D**, and subject to the following terms and conditions:

(a) GWB has obtained at its sole cost and expense a title commitment (the "**Forbes Commitment**") to issue an owner's policy of title insurance in the amount of $490,000.00 naming GWB as the insured, which commitment shall provide that said policy shall be issued after the Warranty Deed is recorded with the Holt County recorder. The Forbes Commitment shall include copies of all title exceptions, covenants, conditions, reservations and encroachments and a copy shall be delivered to Russell upon receipt by GWB. Within three business days after receipt of the Forbes Commitment, GWB will notify Russell in writing of any objections to the Forbes Commitment. If no objections are timely received by Russell, the Forbes Commitment will be deemed accepted by GWB. Russell shall take reasonable effort to correct or satisfy any GWB objections to the Forbes Commitment prior to the Closing Date. If the title defects cannot be corrected or satisfied, then this Agreement shall be void, unless GWB gives notice to the Russell in writing of its election to waive such defects.

2

61476862.5

(b) On or before the Closing Date, Russell shall pay all general real estate taxes levied and assessed against the Forbes Farm for 2017 and prior years.

(c) On the Closing Date, Russell shall deliver possession of the Forbes Farm to GWB. No tenant or sharecropper shall have any rights in the Forbes Farm.

(d) The transfer of the Forbes Farm shall take place on a date mutually agreeable between Russell and GWB but no later than March 16, 2018 except with the consent of GWB (the "**Closing Date**").

(e) Russell agrees not to interfere or attempt to interfere with the sale of the Forbes Farm by GWB.

3. Not later than March 31, 2018, Russell shall pay to GWB in immediately available funds the sum of $250,000.00 for the release of all liens of Manville and GWB on the Bin Site, on the Russell Property, and on all other real and personal property currently or formerly owned by Russell, provided, however, nothing herein shall impair GWB's rights with respect to the Claim as provided for herein. Within five days after the payment of the $250,000, and provided that all terms and conditions set forth herein have been satisfied, GWB and Manville shall record with the Holt County recorder a Release of Real Estate Deed of Trust and the General Pledge of Note/Pledge of Collateral in the same form and substance as is attached hereto as **Exhibit E**, and shall file any necessary UCC-1 terminations reflecting a release of any UCCs held by GWB or Manville related to any property currently or formerly owned by Russell or his corporation Lakeshore Farms, Inc., provided, however, that Manville and/or GWB may maintain in effect any UCC-1 that perfects a security interest in the Claim so long as any now existing UCC-1 is amended to release all other property currently or formerly owned by Russell. Russell hereby authorizes Manville and/or GWB to file such amendments as are necessary to effectuate the terms of this Section 3.

4. Within five days after the Closing Date, the Parties shall file in the Litigation a stipulation in the same form and substance as is attached hereto as **Exhibit F**, pursuant to which the Parties agree that the $25,000 deposit paid by Russell in the Litigation in lieu of a bond shall be distributed by the Holt County Clerk of Court as follows: (i) $12,500.00 shall be returned to Russell and (ii) $12,500.00 shall be delivered to GWB.

5. On the Closing Date, Russell shall absolutely and unconditionally assign 85 percent of Russell's right, title, and interest in the Claim to GWB and Frontier will release any claim it has to the 85 percent. On the Closing Date, Russell shall also deliver to GWB evidence that any other assignments of the 85 percent of the Claim have been released, including, but not limited to, the Assignment of Indemnity granted by Russell to Frontier Bank. If possible under crop insurance regulations, GWB will release 15 percent of its Assignment of Indemnity on the Claim and Frontier will retain its interest in the 15 percent. The Parties further agree that in the event Russell prevails on Russell's claims with respect to the Claim and becomes entitled to receive any proceeds payable in connection with the Claim (collectively, the "**Claim Proceeds**"), such Claim Proceeds shall be distributed as follows: (i) first, to the unpaid attorneys' fees and litigation expenses incurred in connection with the Claim Litigation (the "**Claim Expenses**"); (ii) second, 85 percent of the Claim

Proceeds minus the Claim Expenses to GWB (the "**GWB Proceeds**"); and (iii) third, 15 percent of the Claim Proceeds minus the Claim Expenses to Frontier (the "**Frontier Proceeds**"). No Party will challenge the right of GWB to receive 85 percent of the Claim Proceeds minus the Claim Expenses, and no Party will challenge the right of Frontier to receive 15 percent of the Claim Proceeds minus the Claim Expenses. In connection with the Claim Litigation, Russell hereby represents that all information submitted in connection with the Claim has been true and accurate and that Russell shall cooperate in pursuing the Claim to final judgment, provide truthful testimony when required, and provide records necessary to support the Claim. Russell will further take reasonable effort in the Claim Litigation to seek approval to have the GWB Proceeds delivered directly to GWB and the Frontier Proceeds to Frontier, or, in the alternative to have all Claim Proceeds delivered to GWB in which case, GWB shall within ten days upon receipt of the Claim Proceeds deliver to Frontier the Frontier Proceeds.

In the event Manville and Russell both agree to pursue any claim against the insurance company (the "**Insurance Claim**") related to the Claim Litigation and the refusal of the insurance company to provide insurance, then Manville and Russell agree that any proceeds from the Insurance Claim shall be split with fifty percent of such proceeds going to Manville and fifty percent of such proceeds going to Russell.

6.    On the Effective Date, Manville shall deliver to Russell a release from Gage pursuant to which Gage fully releases Russell from any obligations with respect to the Gage Claim. Manville irrevocably and unconditionally agrees to indemnify Russell for and with respect to all losses, claims, expenses (including, without limitation, reasonable attorneys' fees and courts costs) and other liabilities that are incurred by Russell and that arise out of, or are attributable to, the Gage Claim.

7.    In the event that Manville is awarded any amounts in connection with the Russell Syngenta Claim (the "**Russell Syngenta Claim Proceeds**"), Manville shall within ten days from receipt of such amounts deliver to Russell all portions of the Russell Syngenta Claim Proceeds that relate to the Russell Syngenta Claim. Manville further agrees not to assign or encumber any portion of the Russell Syngenta Claim, and GWB hereby acknowledges Russell's right to receive a portion of the Syngenta Claim Proceeds that is attributable to the Russell Syngenta Claim.

8.    GWB and Manville, and their respective past, present and future partners, shareholders, members, managers, officers, directors, employees, agents, attorneys, representatives, successors, assigns, subsidiaries, affiliates, parents, direct and indirect equity holders, owners, and predecessors in interest and all persons claiming by, through, or under any of them, and their respective successors and assigns (collectively, and jointly and severally, the "**GWB/Manville Releasing Parties**") hereby jointly and severally, remise, release, acquit and forever discharge Russell and Russell's affiliates and Frontier, and their subsidiaries, participants or assigns, and all of Russell's past, present, and future shareholders, members, directors, managers, officers, employees, attorneys, advisers, consultants, representatives or agents (collectively, the "**Russell/Frontier Released Parties**") from any and all manner of debts, accounts, bonds, warranties, representations, covenants, promises, contracts, controversies, agreements, liabilities, obligations, expenses, damages, judgments, executions, actions, claims, demands and causes of

4

action of any nature whatsoever, whether at law or in equity, whether known or unknown, that any of the GWB/Manville Releasing Parties now have or may hereafter have by reason of any act, omission, matter, cause or thing, from the beginning of the world to and including the Effective Date, including matters arising out of or relating to Litigation or the Guaranty Agreements (all of the foregoing released claims are sometimes referred to as the "**GWB/Manville Released Claims**"), provided, however, that nothing herein shall be deemed to release Russell from any of Russell's obligations under this Agreement except as expressly set forth herein. GWB/Manville Releasing Parties acknowledge that, subsequent to the execution of this Agreement, any of the GWB/Manville Releasing Parties might discover claims against a released person or entity that were unknown or unanticipated at the time this Agreement was executed and that, if one or more of the GWB/Manville Releasing Parties had known of the existence of such claims on the date this Agreement was executed, such knowledge may have materially affected one or more of the GWB/Manville Releasing Parties' decision to execute this Agreement. GWB/Manville Releasing Parties further acknowledge that they are assuming a risk with respect to the existence of such unknown or unanticipated claims and agree that this Agreement applies to such unknown or unanticipated claims. Each of the GWB/Manville Releasing Parties expressly waives the benefits of any applicable statutory provision prohibiting, conditioning or restricting the release of unknown or future claims or any of the claims being released in connection with this Agreement.

Nothing herein shall be deemed to be a release of any claims GWB may have against Russell with respect to a certain credit card issued by GWB to Russell or any other consumer accounts obtained by Russell from GWB after the Effective Date.

9.      Frontier Bank, Russell, and Russell's and Frontier's past, present and future partners, shareholders, members, managers, officers, directors, employees, agents, attorneys, representatives, successors, assigns, subsidiaries, affiliates, parents, direct and indirect equity holders, owners, and predecessors in interest and all persons claiming by, through, or under any of them, and their respective successors and assigns (collectively, and jointly and severally, the "**Russell/Frontier Releasing Parties**") hereby jointly and severally, remise, release, acquit and forever discharge GWB's and Manville's affiliates, subsidiaries, participants or assigns, and all of GWB's and Manville's past, present, and future shareholders, members, directors, managers, officers, employees, attorneys, advisers, consultants, representatives or agents (collectively, the "**GWB/Manville Released Parties**") from any and all manner of debts, accounts, bonds, warranties, representations, covenants, promises, contracts, controversies, agreements, liabilities, obligations, expenses, damages, judgments, executions, actions, claims, demands and causes of action of any nature whatsoever, whether at law or in equity, whether known or unknown, that any of the Russell Releasing Parties now have or may hereafter have by reason of any act, omission, matter, cause or thing, from the beginning of the world to and including the Effective Date, including matters arising out of or relating to Litigation (all of the foregoing released claims are sometimes referred to as the "**Russell Released Claims**"), provided, however, that nothing herein shall be deemed to release Manville or GWB from any of their respective obligations under this Agreement except as expressly set forth herein. Russell Releasing Parties acknowledge that, subsequent to the execution of this Agreement, any of the Russell Releasing Parties might discover claims against a released person or entity that were unknown or unanticipated at the time this Agreement was

5

61476862.5

executed and that, if one or more of the Russell Releasing Parties had known of the existence of such claims on the date this Agreement was executed, such knowledge may have materially affected one or more of the Russell Releasing Parties' decision to execute this Agreement. Russell Releasing Parties further acknowledge that they are assuming a risk with respect to the existence of such unknown or unanticipated claims and agree that this Agreement applies to such unknown or unanticipated claims.

Each of the Russell Releasing Parties expressly waives the benefits of any applicable statutory provision prohibiting, conditioning or restricting the release of unknown or future claims or any of the claims being released in connection with this Agreement.

10.  Manville hereby acknowledges that the value of all property, amounts and other rights being transferred herein by Russell to or for the benefit of Manville, including any property, amounts or other rights being transferred to GWB for the benefit of Manville is equal to any obligations owed by Russell in connection with any loan transactions between Russell and Manville. GWB hereby acknowledges that Russell is a guarantor of debt owed by Manville to GWB and not a borrower of GWB and that, accordingly, GWB is not obligated to send to Russell a Form 1099(c).

11.  Except to enforce the terms of this Agreement, each Party agrees and covenants to forever refrain and desist from instituting or asserting against any claim, demand, action or suit of whatever kind or nature, either directly or indirectly, for injuries or damage, to person or property, resulting or to result from any matter released above. This instrument may be pleaded as a counterclaim to or as a defense in bar or abatement of any action of any kind whatsoever, brought, instituted or taken by or on behalf of one party on account of the alleged claim or claims against any other party to this Agreement.

12.  The Agreement represents the entire agreement of the Parties and there are no oral understandings, statements, promises, or inducements contrary to the terms of this Agreement.

13.  The Agreement shall be governed by, construed and enforced in accordance with, and subject to the laws of the State of Missouri.

14.  The Agreement may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes. A photocopied, scanned, facsimile or other electronic signature of any Party to this Agreement shall have the same force and effect for all purposes as an original signature.

15.  In the event of a breach of this Agreement, if such breach is not cured within ten days after written notice of the alleged breach, then if litigation is required to enforce this Agreement, the prevailing Party, in addition to any other remedy, shall be entitled to recover its reasonable attorneys' fees.

16.  This Agreement is binding on the Parties, and their respective heirs, personal representatives, successors and assigns.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date.

[Signatures to follow this Page]

61476862.5

_____
**Jonathan L. Russell**

_____
**Sarah L. Russell**

**Lakeshore Farms, Inc.**

_____
Jonathan L. Russell, President


**Manville Farms**

_____
John Manville, as general manager and authorized agent

**John Manville Farms, Inc.**

_____
John Manville, as general manager and authorized agent

**Bethany Grain, LLC**

_____
John Manville, as general manager and authorized agent

**Ridgeway Grain, LLC**

_____
John Manville, as general manager and authorized agent

**Cainsville Grain, LLC**

_____
John Manville, as general manager and authorized agent


_____
**John Manville**

**Great Western Bank**

By: _____
Name: _____
Title: _____

**Frontier Bank**

By: _____

Name: _____

Title: _____

8

61476862.5