## IN THE UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF MISSOURI

In re:

**Lakeshore Farms Inc.,**

**Case No. 18-50077**
**Chapter 11**

                                        **Debtor.**

### FIRST AMENDED PLAN OF REORGANIZATION OF DEBTOR
### UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

This Plan is prepared and filed by Lakeshore Farms Inc., (a Missouri Subchapter S Corporation) as Debtor.

Debtor filed this case on February 28, 2018 as case number 18-50077, in the United States Bankruptcy Court for the Western District of Missouri.

### ARTICLE I
*Definitions*

For the purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined have the meanings ascribed to them in Article I of the Plan. Any term used in the Plan that is not defined herein but is defined in the Bankruptcy Code or the Bankruptcy Rules retains the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires, such terms include the plural as well as the singular, the masculine gender includes the feminine gender, and the feminine gender includes the masculine gender.

As used in this Plan, the following terms have the meanings specified below.

**1.1    Administrative Claim.**    A claim for any cost or expense of administration of the Chapter 11 case allowed under §364(a), (b), (c), 503(b), 507(b) or 546(c)(2) of the Bankruptcy Code and entitled to priority under §507(a)(1) of the Bankruptcy Code, or as otherwise allowed by the Bankruptcy Court and not included in any other classification under the Plan, but including, without limitation: (a) fees payable under 28 U.S.C. §1930; (b) actual and necessary costs and expenses incurred in the ordinary course of Debtor business: and (c) actual and necessary costs and expenses of preserving the Estate or administering the Chapter 11 case,

1

but not including Ordinary Course Administrative Claims or Professional Fees.

 **1.2** **Allowed Claim.** With respect to any Claim against the Debtor: (a) proof of which, requests for payment of which, or application for allowance of which, was filed or deemed filed on or before the Bar Date, the Administrative Claim Bar Date, or the Professional Fee Bar Date, as applicable, for filing proofs of claim or requests for payment for Claims of such type against Debtor; or (b) if no proof of claim is filed, which has been or is ever listed by Debtor in the Schedules as liquidated in amount and not disputed or contingent, and, in the case of (a) or (b) a Claim as to which no objection to its allowance has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court.  The term "Allowed", when used to modify a reference in the Plan to any Claim or Class of Claims means a Claim (or any Claim in any such Class) that is so allowed.  If a Claim becomes Allowed by virtue of an order of the Bankruptcy Court, it shall be deemed Allowed upon the order becoming a Final Order.

 **1.3** **Allowed Priority Claim.** An Allowed Claim entitled to priority pursuant to §507 of the Bankruptcy Code.

 **1.4** **Allowed Secured Claim.** An Allowed Claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under §553 of the Bankruptcy Code, to the extent of the value [determined in accordance with §506(a) of the Bankruptcy Code] of the interest of the Holder of such Allowed Claim in the Debtor's interest in such property, or the extent of the amount subject to setoff, as the case may be.

 **1.5** **Bankruptcy Code or Code.** United States Bankruptcy Code 11 U.S.C. §101 at seq. and any amendments thereto.

 **1.6** **Chapter 11 Case.** The case under Chapter 11 of the Bankruptcy Code in which Debtor is Debtor and Debtor-in-Possession, pending before the Bankruptcy Court.

 **1.7** **Claim.** Any "claim" as defined in §101(5) of the Bankruptcy Code and any other debt obligation of whatever character of the Debtor, as of Claims Bar Date, including any accrued and unpaid interest thereon up to that date, and any Claim arising from the rejection of an executory contract or unexpired lease.

 **1.8** **Confirmation Date.** The date upon which the Order of Confirmation of this Plan is entered by the Court.

**1.9    Court.**    The United States Bankruptcy Court for the Western District of Missouri in which the Debtor's Chapter 11 case is pending, including any Bankruptcy Judge sitting in said Court, and any Court having competent jurisdiction to review orders of the Bankruptcy Judge or to hear appeals therefrom.

**1.10    Creditor.**    Any Holder of a Claim, whether or not such Claim is an Allowed Claim, encompassed within the statutory definition set forth in §101(10) of the Bankruptcy Code.

**1.11    Disclosure Statement.**    The written Disclosure Statement relating to the Plan including, without limitation, all exhibits and schedules to such disclosure statement, in the form approved by the Bankruptcy Court under §1125 of the Bankruptcy Code or Bankruptcy Rule 3017.

**1.12    Effective Date.**    Ten (10) days after the date on which the Order of Confirmation becomes a Final Order and Judgment, all conditions to the effectiveness of the Plan expressly set forth therein have been satisfied fully or effectively waived, and no stay of the Confirmation Order is in effect.

**1.13    Estate.**    The Estate of Debtor created in the Chapter 11 case in accordance with §541 of the Bankruptcy Code.

**1.14    Final Order and Judgment.**    An Order of Judgment of the Court which is no longer subject to appear, review or modification and as to which no appeal, review or modification proceeding is pending.

**1.15    Holder.**    The Person on whose behalf and in whose name a Claim was listed or filed with the Court, or the Person to whom such Claim was last transferred by an Order of the Court substituting the transferee for the prior Holder thereof.

**1.16    Nonpriority Unsecured Claim.**    Any Claim against Debtor as of the Petition Date not secured by a charge against or interest in property of the Estate, excluding: (a) Secured Claims, except that portion, if any, that is unsecured in accordance with §506 of the Bankruptcy Code; (b) Administrative Claims; (c) Ordinary Course Administrative Claims; (d) Priority Tax Claims; (e) Priority Claims; and (f) Claims for Professional Fees.

**1.17    Order of Confirmation.**    The Order entered by the Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code, and which is no longer subject to appeal, modification or review.

**1.18    Person.**    An individual, corporation, partnership, joint venture, trust, estate,

3

unincorporated organization, government or any agency or political subdivision thereof.

**1.19    Plan.**    This Plan of Reorganization and any duly authorized amendments thereto or modifications thereof.

**1.20    Professionals.**    Those Persons (a) employed in accordance with an order of the Bankruptcy Court under §§327 or 1103 of the Bankruptcy Code and to be compensated for services under §327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court under §503(b) of the Bankruptcy Code.

**1.21    Pro Rata.**    With respect to the Holder of any Claim, Pro Rata shall mean in the same proportion that the amount of the Allowed Claim of such Holder in any class of claims bears to the aggregate amount of all Allowed Claims in such class, including in such aggregate amount bother the Allowed Claims and any then unresolved Disputed Claims as of the date of any distribution payment pursuant to the Plan.

# ARTICLE II
## *Classification and Treatment of Claims and Interests*

All Claims against the Debtor of whatever nature, whether or not scheduled, liquidated or unliquidated, absolute or contingent, including all Claims arising from transactions of the Debtor or the rejection of executory contracts or unexpired leases of the Debtor, whether resulting in an Allowed Claim or not, shall be bound by and deemed satisfied by the Provisions of the Plan. The Claims and Interests shall be treated as follows:

**2.1    Class 1, Administrative Claims.**    Each Allowed  Administrative Claim  is to be paid in full in cash (or otherwise satisfied in accordance with the terms of the Plan  or  the terms agreed to by Debtor and the holder of such Claim) by Debtor on the latest of: (a) the Effective Date; (b) such date as may be fixed  by the  Bankruptcy Court; (c) the tenth  business day after such Claim is Allowed; and (d) such date as the Holder of such Claim and Debtor may agree; or as soon thereafter as is practicable.

**2.2    Class 2, Priority Tax Claims and Other Allowed Priority Non-Tax Claims.**

**Priority Tax Claims.**    As set forth more fully in the Plan, unless otherwise agreed by the holder of a Priority Tax Claim and the Reorganized Debtor, each Tax Creditor will receive, in full satisfaction of its Allowed Priority Tax Claim, deferred cash payments totaling the

Allowed amount of such Claim over a period not exceeding five (5) years from the Petition Date, as required by the Bankruptcy Code, which period shall conclude on or about February 28, 2023. The Plan provides that payments on the Allowed Priority Tax Claims will be made beginning on the first Semi-Annual Distribution Date following the Effective Date and shall continue to become due on each subsequent Semi-Annual Distribution Date until the Priority Tax Claims are paid in full.  The payments on the Allowed Priority Tax Claims shall be made in equal semi-annual installments of principal and simple interest accruing from the Effective Date at the current rate of interest required by law on the unpaid portion of each Allowed Priority Tax Claim (or upon such other terms determined by the Bankruptcy Court to provide the holders of Priority Tax Claims with deferred cash payments having a value, as of the Effective Date, equal to the Allowed amount of such Priority Tax Claims).  No payments will be made on account of any penalty arising with respect to or in connection with an Allowed Priority Tax Claim.  The Reorganized Debtor will have the right and discretion to pay any Allowed Priority Tax Claim, or any remaining balance of such Priority Tax Claim, in full, at any time on or after the Effective Date, without premium or penalty and without further order of the Court if cash is available to do so.  **THE DEBTOR DOES NOT BELIEVE THERE ARE PRIORITY TAX CLAIMS TO BE PAID UNDER THE PLAN.**

**Other Allowed Priority Non-Tax Claims.**  Under the Plan, as soon as practicable after the later of the Effective Date and the date the Claim becomes an Allowed Claim, each holder of an Allowed Priority Non-Tax Claim against a Reorganized Debtor will receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Non-Tax Claim a Distribution from the applicable Reorganized Debtor:  (i) in Cash equal to the unpaid portion of such Allowed Priority Non-Tax Claim against the Debtor, or (ii) in such amounts and on such other terms as may be agreed between the holder of the Allowed Priority Non-Tax Claim and the Debtor, or (iii) in accordance with the terms of the particular agreement under which such Priority Non-Tax Claim arose.  To the extent that any Creditor's total Allowed Priority Non-Tax Claim exceeds the amount entitled to Priority treatment under 11 U.S.C. § 507, the remaining amount of such Claim shall be treated as a Class 16 Allowed Unsecured Claim.  **THE DEBTOR DOES NOT BELIEVE THERE ARE ANY UNPAID NON-TAX CLAIMS TO BE PAID UNDER THE PLAN.**

**2.3**  **Class 3, Allowed Secured Claim of ARM.**  ARM may hereinafter be referred to as

the "Class 3 Claimant."

The Class 3 Claim consists of the post-petition Debtor in Possession lender. The Class 3 Claimant shall be paid in full, from the proceeds of the 2018 crop sales in accordance with the terms of the loan documents.

**This class is unimpaired.**

**2.4**   **Class 4, Allowed Secured Claim of Frontier Bank fka Richardson County Bank & Trust Co.**   Frontier Bank may hereinafter be referred to as the "Class 4 Claimant."

The Class 4 Claimant's claim consists of monies owed to the Class 4 Claimant under loan # 110-052-632.7. an accurate and full description/copy of the loan documents; and each is more fully described and attached in **Exhibit G** and incorporated herein by reference, (collectively, the "Loan Documents"). The Class 4 claim is evidenced by an individual promissory note executed, by the Debtor (loan # 110-052-632.7) hereinafter referred to as the Original Note.   The Original Note is secured by duly recorded UCC-1's on the Lakeshore Equipment, and Lakeshore personal property A schedule of the personal property and equipment and any recorded UCC 1's is attached in **Exhibit G** and incorporated herein by reference, and is also secured by duly recorded deeds of trust conveying interests in real estate owned by Jon Russell and assignments of rents in real estate described in such deeds of trust.   A description of the recorded deeds of trust and assignments of rents in real estate described in such deeds of trust is attached in **Exhibit G** and incorporated herein by reference All of Class 4 Claimant's claim is personally guaranteed, jointly and severally, by Jon Russell and Sarah Russell, and also by GDD Lakeshore Properties, LLC and the Debtor.

As of the date of this Disclosure Statement, the total debt on the Class 4 Claim is $2,633,748.93, consisting of $2,207,571.85 in principal and $426,177.08 in accrued interest. The Class 4 Claimant's claim is under-secured as the collateral securing the Class 4 Claimant's claim is believed to be less than the balance owing the Class 4 Claimant. The Debtor and the Class 4 Claimant have agreed to treat $1,300,000 of Class 4 Claimant's claim as a fully secured allowed claim, with the $1,333,748.93 balance of the Class 4 Claimant's Claim treated as an allowed unsecured Class 12 claim.

The Debtor or Reorganized Debtor shall pay the total allowed amount of the Class 4 Claim pursuant to the terms of the Original Note and Loan Documents, subject to the following modifications (hereinafter referred to as the "Modified Note"): (1) the principal balance owed

under the Modified Note shall be $1,300,000.00; (2) interest shall accrue on the outstanding principal balance owed under the Modified Note at the fixed rate of 5.5% per annum from the Effective Date which shall be on or before April 15, 2019 and on or before April 15 of each calendar year, the Debtor/Reorganized Debtor shall make annual payments on the outstanding principal and interest owed on the Modified Note based on an eight (8) year amortization schedule, with the first payment due on or before April 15, 2019 and the final payment due on or before April 15, 2026; and (4) the Debtor/Reorganized Debtor may prepay the Modified Note at any time without penalty. Under the Plan, Class 4 will recover 100%.

The remaining balance owed under the Original Note in the amount of $1,333,748.93 shall be converted to an unsecured promissory note (hereinafter referred to as the "Unsecured Note") and included in Class 12 as an allowed unsecured claim.  Pursuant to the terms of the Unsecured Note, on or before April 15 of each calendar year, the Debtor/Reorganized Debtor shall make equal annual payments to Frontier Bank in the amount of three percent (3.0%) of the principal amount of the Promissory Note for seven (7) years.

The Debtor/Reorganized Debtor and Frontier Bank shall fully and expeditiously cooperate after confirmation of the Plan to execute any and all documents necessary to incorporate the modifications to the Original Note described herein, including, but not limited to, the Modified Note and payment schedule. On or before the 15th of each quarter, the Debtor/Reorganized Debtor shall submit to Frontier Bank monthly financial statements for the prior month which shall include, at a minimum, an income statement, balance sheet, and sources and uses of funds statement.

Other than as set forth above, all terms and conditions of the Original Note and Loan Documents shall remain unmodified and unimpaired and the Debtor/Reorganized Debtor shall remain bound by and shall comply with their terms and conditions.  Frontier Bank's Class 4 and Class 12 claims shall be treated in accordance with all of the terms and conditions of the Loan Documents respecting such claims, as modified herein, and the legal, equitable, and contractual rights and remedies to which Frontier Bank is entitled under the Original Note and Loan Documents shall not be further altered, included Frontier Bank retaining all priority lien and security interest positions with the same status and priority as it maintained prior to the Petition Date.

Except as otherwise expressly provided for under the Plan, nothing contained in the Plan

is intended to nor shall have the effect of binding, discharging, or releasing the individual or corporate Guarantors in any way or for any purpose or otherwise affecting their obligations under their respective Guarantees. Confirmation of the Plan shall not discharge or release the Guarantors from their obligations under their respective Guarantees or otherwise affect such obligations in any way whatsoever.

Upon payment in full of the Modified Note and payment of twenty-one percent (21%) of the original principal balance of the Unsecured Note (that is treated as a Class 12 claim), as and when provided under the terms and conditions of such Notes, the liens evidenced by the Loan Documents shall be deemed satisfied and shall be deemed canceled and all personal guarantees by Jon Russell and Sarah Russell, and guaranty by GDD Lakeshore Properties, LLC, and any other guarantees related to the Original Note, the Modified Note, the Unsecured Note, or the Loan Documents shall be deemed satisfied and paid in full and the Debtor as well as Jon Russell, Sarah Russell, and GDD Lakeshore Properties, LLC shall be released of any further obligations, monetary or otherwise, to Frontier Bank.

Nothing in the Plan shall enhance or otherwise increase the rights of the holder of the Class 4 claim to seek recovery on its claim as against any party other than the Reorganized Debtor.

**Class 4 and Class 12 are impaired.**

**2.5**     **Class 5, Allowed Secured Claim of Union Bank.**   Union Bank may hereinafter be referred to as the "Class 5 Claimant."

Class 5 consists of the allowed secured claim of Union Bank. The class 5 claim in the amount of $23,050.21 as of February 28, 2018 is secured by a 2015 Ford F350. During this case payments to this creditor have been made according to the terms of the note. Monthly payments in the amount of $1,026.80 will continue to be made until the note paid on January 20, 2020, at which time, the Class 5 Claimant shall promptly deliver to Debtor the "paid note" and release of liens.

Nothing in the Plan shall enhance or otherwise increase the rights of the holder of the Class 5 claim to seek recovery on its claim as against any party other than the Reorganized Debtor.

**This Class is unimpaired.**

**2.6**   **Class 6, Allowed Secured Claim of TD Auto**.   TD Auto may hereinafter be referred to as the "Class 6 Claimant."

Class 6 consists of the allowed secured claim of TD auto. The class 6 claim, in the amount of $47,161.66 as of the petition date, is secured by a 2016 Ford F350. During this case payments to this creditor have been made according to the terms of the note. Monthly payments in the amount of $1,059.52 will continue to be made until the note is fully paid on March 2, 2022, at which time the Class 6 claimant shall promptly deliver to the debtor for the "paid note" and release of liens.

Nothing in the Plan shall enhance or otherwise increase the rights of the holder of the Class 6 claim to seek recovery on its claim as against any party other than the Reorganized Debtor.

**This Class is unimpaired.**

**2.7**   **Class 7, Allowed Secured Claim of TD Auto.** TD Auto may hereinafter be referred to as the "Class 7 Claimant."

Class 7 consists of the allowed secured claim of TD auto. The class 7 claim, in the amount of $44,806.19 as of the petition date, is secured by a 2016 Cadillac Escalade. During this case payments to this creditor have been made according to the terms of the note. Monthly payments in the amount of $1,024.78 will continue to be made until the note is fully paid on January 6, 2022, at which time, the class 7 claimant shall promptly deliver to the debt or the "paid note" and release of liens.

Nothing in the Plan shall enhance or otherwise increase the rights of the holder of the Class 7 claim to seek recovery on its claim as against any party other than the Reorganized Debtor.

**This Class is unimpaired.**

**2.8**   **Class 8, Allowed Secured Claims of Translease**   Translease may hereinafter be referred to as the "Class 8 Claimant."

Class 8 consists of the allowed secured claim of Translease. The Class 8 Claim derives from two leases, one of a 2013 Bulk Tank International Trak Trailer and the other of a 2014 Timpte Hopper Grain Trailer. Payments to this Creditor were delinquent on the Petition Date. Pursuant to a Stipulation of Settlement dated August 9, 2018, and approved by the Court on August 22, 2018, this Creditor is currently being paid and shall continue to be paid as follows:

Commencing in August 2018, monthly lease payments and the residual due under each of the Leases shall be repaid by the Debtor on a monthly basis until all sums due thereunder are paid in full. The Debtor shall be responsible for ongoing monthly Lease payments in the aggregate amount of $1,617.46, consisting of $982.24 for the 2013 Bulk Tank International Tank Trailer, and $655.22 for the 2014 Timpte Hopper Grain Trailer. The arrears due the Class 8 Creditor for April through July 2018, in the amount of $6,469.84, were paid pursuant to the Order approving the Stipulation of Settlement. The Class 8 Claimant will retain its security interest in the collateral until the Leases are satisfied, at which time, the Class 8 Claimant shall promptly deliver to the Debtor the "paid note" and titles to the 2013 Bulk Tank International Trak Trailer and the 2014 Timpte Hopper Grain Trailer. The debtor accepts all of the Class 8 leases

Nothing in the Plan shall enhance or otherwise increase the rights of the holder of the Class 8 claim to seek recovery on its claim as against any party other than the Reorganized Debtor.

**This Class is unimpaired**

**2.9** **Class 9, Allowed Secured Claims of Northland Capital Equipment Finance.**
Northland Capital Equipment Finance may hereinafter be referred to as the "Class 9 Claimant."

Class 9 consists of the allowed secured claim of Northland Capital Equipment Finance. Class 9 claim derives from a master lease dated March 8, 2011, in the following finance leases:

February 6, 2013 lease of a 2013 10 Timpte model for 4228 super Hopper GRAIN trailer (the 4228 trailer) with five annual payments of $8,430.88 ending May 2018. This lease has been fully paid; Debtor has requested the Class 9 Claimant deliver to the debtor the "paid note" and release of liens on 4228 trailer ion accordance with the 4228 trailer lease and has not yet received the "paid note" and release of liens.

The Debtor accepts the November 6, 2014, lease of a 2014 Horsch RT – 370 Joker with annual payments of $18,450 ending November 29, 2019;

The Debtor accepts the February 22, 2016 lease of a 2017 10 Timpte 4228 super Hopper trailer with annual payments of $7,449.90 ending January 28, 2022;

The Debtor accepts the August 23, 2016 lease of the 2017 lease of the 2017 Timpte 228 super

Hopper trailer with five annual payments of $8,867.24 ending January 2022.

The annual payments on the above referenced leases will continue to be made until the finance leases are fully paid, with the exercise of the purchase option, on their contracted dates, at which time, the class 9 claimant shall promptly deliver to the debtor the "paid note" and release of liens.

The Debtor also has leases with the Class 9 Claimant that the Debtor is rejecting as detailed below.

### First Northland Lease Rejected

The Debtor has a January 8, 2016 lease of a 2014 John Deere 4940 self-propelled sprayer with StarFire 3000 receiver (hereinafter the 4940 lease and or 4940 Sprayer) with the Class 9 Claimant.  The Debtor rejects the 4940 lease.  The balance on the 4940 lease on February 1, 2018 was $188,399.44. The lease called for annual payments of $39,345.56 with the final payment due on January 1, 2021. The Debtor made payments in 2016, 2017, and 2018 to Northland Capital under this lease and the lease matures on January 1, 2021 meaning the debtor is defaulting on three payments, of $39,345.56 for a total default under the lease of $118,036.68.

The debtor believes the fair market value of the 2014 John Deere 4940 self-propelled sprayer is approximately $150,000 and the debtor therefore anticipates that there will be no deficiency payable to North land equipment finance under the lease when the tractors returned to North land equipment finance and subsequently credited to the debtor or sold to make the remaining payments due under the lease.

In the event there is a deficiency due to the Class 9  Claimant under 4940 Sprayer lease, by way of the debtor rejecting 4940 Sprayer lease, any monies owed to Northland Capital Equipment Finance by way of the debtor rejecting the 8345rt lease shall be an unsecured deficiency claim and be added to the unsecured creditors' claims in Class 12 and  Northland Capital Equipment Finance shall be treated as a Class 12 unsecured creditor for the amount of any deficiency under the 4940 Sprayer lease, and be able to vote its unsecured deficiency claim as a Class 12 creditor and be paid in accordance with the treatment of the Class 12 creditors under the plan

### 2nd Northland Lease Rejected

The debtor has a February 16, 2016 lease of a 2008 John Deere 8430 tractor (hereinafter the 8430 lease) with the Class 9 Claimant the debtor rejects the 8430 lease the balance on the 8430 lease on February 1, 2018 was $113,453.56. The lease called for annual payments of $32,475.67 with the final payment due on January 28, 2021 the debtor made payments in 2016 and 2017 to Northland Capital under this lease and the lease matures on January 28, 2021 meaning the debtor is defaulting on four payments of $32,475.67 for a total default under the lease of $129,902.68.

The debtor believes the fair market value of the 2008 John Deere 8430 tractor is approximately $85,000 and the debtor therefore anticipates there will be a deficiency of approximately $44,902.68 under the 8430 lease. The exact amount, (Debtor estimates there is an approximate $44,902.68 deficiency) owed to Northland Capital by way of the debtor rejecting the 8430 lease is an unsecured deficiency claim, and shall be added to the unsecured creditors' claims in Class 12 and Northland Capital shall be treated as a class 12 unsecured creditor for their unsecured deficiency claim and be able to vote the exact amount of its unsecured deficiency claim as Class 12 creditor and be paid in accordance with the treatment of the class 12 creditors under the plan.


Nothing in the Plan shall enhance or otherwise increase the rights of the holder of the Class 9 claim to seek recovery on its claim as against any party other than the Reorganized Debtor.

**This Class is unimpaired.**

**2.10**

**Class 10 Purposely Deleted.**   Class 10 is purposely deleted as Class 10 previously referred to Wells Fargo Equipment Finance lease that Debtor had not yet rejected; however, The Debtor rejects the Wells Fargo Equipment Finance March 28, 2016 finance lease of a 2013 John Deere 8335R Tractor (the 8335 tractor and or 8335 Tractor Lease) with five annual payments of $48,167.37 ending March 2021 which lease was initially held by Northland Capital.

The Debtor made payments in 2016 and 2017 and the lease matures in 2020 meaning the Debtor is defaulting on 3 payments of $48,167.37 for a total default under the lease of $144,502.11

The debtor believes the fair market value of the 2013 John Deere 8335R Tractor is $160,000 and

the debtor therefore anticipates that there will be no deficiency payable to Wells Fargo Equipment Finance under the lease when the tractor is returned to Wells Fargo Equipment Finance and subsequently credited to the Debtor or sold to make the remaining payments due under the lease.

In the event there is a deficiency due to the Class 10 Claimant under the 8335 tractor lease, by way of the debtor rejecting the 8335R tractor lease, any monies owed to Wells Fargo Equipment Finance by way of the debtor rejecting the 83355 Tractor lease shall be shall be an unsecured deficiency claim and added to the unsecured creditors' claims in Class 12 and  Wells Fargo Equipment Finance shall be treated as a Class 12 unsecured credit for the amount of any unsecured deficiency claim deficiency under the 8335 lease, and be able to vote its unsecured deficiency claim as a Class 12 creditor and be paid in accordance with the treatment of the Class 12 creditors under the plan

**This Class is unimpaired.**

**2.11** __Class 11, Allowed Secured Claims of Cobank Farm Credit Leasing.__ Cobank Farm Credit Leasing may hereinafter be referred to as the "Class 11 Claimant."

__Class 11, Allowed Secured Claims of Cobank Farm Credit Leasing.__ Cobank Farm Credit Leasing may hereinafter be referred to as the "Class 11 Claimant."

Class 11 consists of the allowed secured claim of Cobank Farm Credit Leasing.  The Class 11 claim is secured by a 2014 Soucy Tracks -Contract #001-0066417-000 (the Soucy Lease), with annual payments of $14,842.36 and personal property taxes of $309, a 2015 Phillips Harrow -Contract #001-0071287-000 (the Harrow Lease) with annual payments of $6,072.33 and personal property taxes of $184.   The debtor accepts the Soucy lease and the Harrow lease. claimant shall promptly deliver to the debtor the "paid note" and release of liens

During this case, payments to this creditor have not been made according to the terms of the finance lease. The back payments will be cured on or before April 15, 2019 and the annual payments will continue to be made until the finance leases are fully paid with the exercise of the purchase option on their contracted dates at which time, the class 11 claimant shall promptly deliver to the debtor the "paid note" and release of liens.

One Cobank Farm Credit Lease Rejected

The Debtor also has a lease with the Class 11 Claimant of a 2014 8345rt John Deere Tractor (8345rt Tractor) – Contract #001-0066962-000

The Debtor rejects the lease of the 2014 8345rt John Deere Tractor – Contract #001-0066962-000 whose annual payments are approximately $51,559.89. The debtor made payments under Contract #001-0066962-000 in 2015 2016 and 2017. The lease expires in 2020.  On November 13, 2018, the 2018 lease payment had accumulated late charges and the total due on the 2018 lease payment as of November 13, 2018 was $61,633.29 which includes monthly late payments of $793.53 and personal property taxes of $1344.2. By rejecting the lease, the debtor is defaulting on this $61,633.29 payment plus 2 more late payments of $793.53 for a total of $63,220.35 as well as to future payments of $51,559.89 for total default under the lease of approximately $166,340.13

This tractor has been operated for approximately 1600 hrs. and the debtor believes its fair market value is $200,000 and the debtor therefore anticipates that there will be no deficiency payable to CoBank under the lease when the tractor is returned to CoBank and subsequently credited to the debtor or sold to pay the remaining payments due under the lease.

In the event there is a deficiency due to the Class 11 Claimant under 8345rt Tractor lease, by way of the debtor rejecting 8345rt Tractor lease, any monies owed to Cobank Farm Credit by way of the debtor rejecting the 8345rt lease shall be an unsecured deficiency claim and be added to the unsecured creditors' claims in Class 12 and  Cobank Farm Credit shall be treated as a Class 12 unsecured creditor for the amount of any deficiency under the 8345rt lease, and be able to vote its unsecured deficiency claim as a Class 12 creditor and be paid in accordance with the treatment of the Class 12 creditors under the plan

### 2.12    Class 12, Allowed Unsecured Claims.

Before making any provision for deficiencies that would be added to the Class 12 claims by way of the debtors' rejection of various leases with Northland Capital, CoBank, and Wells Fargo Equipment Finance, the Class 12 claims approximate $2,733,191 and include the $1,333,748.93 Frontier Bank Unsecured Note. The debtor estimates that there will be a deficiency through the debtor's rejection of the 8430 tractor lease with Northland Capital of approximately $44,902.68 which will be added to the Class 12 Claims. Out of an abundance of

14

caution, the debtor has provided for up to $300,000 in deficiencies that could be resultant from the debtor's rejection of the various leases with Northland Capital, CoBank, and Wells Fargo Equipment Finance, by adding $300,000 to the $2,733,191 in unsecured claims such that in the projections the unsecured creditors claims in Class 12 total $3,033,191. In the event the deficiencies resultant from the debtor's rejection of the various leases with our greater or less than the $300,000, the payments to the Class 12 creditors shall reflect the exact amount of those deficiencies that are added to the Class 12 claims.

These claims will be paid over 7 years in an annual principal reduction payment equal to 3% of each claimant's claim beginning on April 15, 2019 and ending on April 15, 2025

Total payout to the Class 12 claimants under the plan equals 21% of each class claimant's claim.

**This class is impaired.**

**2.13**    **Class 13, Equity Interests.** The Debtor's Principal, Jon Russell will retain his interest in the Debtor.

### ARTICLE III
### *Implementation of the Plan*

**3.1**    **Effect of Confirmation.** Upon the entry of an Order of Confirmation, the Debtor shall be vested with all of the property of the Estate, subject only to outstanding liens created and/or recognized by this Plan and free and clear of all other claims, liens, encumbrances, charges and other interests of creditors, and shall be entitled to operate its business and manage its affairs free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules, or any local rules of the Bankruptcy Court and without further  order of the Bankruptcy Court, except as otherwise expressly provided under the Plan.

**3.2**    **Indemnification Obligations.** Any obligations or rights of the Debtor to indemnify any guarantor pursuant to any agreement, applicable statute or rule of law with respect to any obligation on which either Debtor is the primary obligor will not be discharged or impaired by confirmation or consummation of the Plan, but will survive unaffected by the reorganization contemplated by the Plan and will be performed and honored by the Debtor. The obligations or rights of the Debtor to indemnify its officers, directors, agents and employees and

guarantors shall be subordinate to all Allowed Claims and shall not be paid unless and until all Holders of claims of Allowed Claims have been paid in full.

      **3.3**    **Term of the Plan.** Unless otherwise expressly stated, the term of the Plan shall be eight (8) years from the date of confirmation.

      **3.4**    **Management.** Management of the Reorganized Debtor will be by Jon Russell.

## ARTICLE IV
### *Executory Contracts and Unexpired Leases*

      **4.1**    **Executory Contracts.** All executory contracts and unexpired leases existing on the date of filing shall be deemed assumed by the Debtor as of the Effective Date, except any executory contract or lease that Debtor's rejection has been approved by the Bankruptcy Court.

      **4.2**    **Deemed Rejected Contracts or Leases.** No executory contract or lease shall be deemed rejected unless so identified in a filing with the Court.

      **4.3**    **Approval of Assumption or Rejection.** Entry of the Confirmation Order shall constitute (a) the approval, pursuant to §365(a) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to the Plan, and (b) the approval, pursuant to §365(a) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to the Plan. Notwithstanding anything contained herein to the contrary, Debtor shall have the right to add or delete any executory contract or unexpired lease to the schedules filed with the Bankruptcy Court on or before the Effective Date.

      **4.4**    **Post-Petition Date Contracts and Leases.** Executory contracts and unexpired leases entered into and other obligations incurred after the Petition Date by Debtor shall be performed by Debtor, as applicable, in the ordinary course of its business.

## ARTICLE V
### *Retention of Liens*

      **5.1**    Liens held by creditors as of the date of filing shall be retained and continue in full force and effect unless modified or avoided by motion, a provision of this Plan, or by Court order after notice and a hearing.

## ARTICLE VI

*Remedy Upon Default*

**6.1**      In the event of default after confirmation, the creditor entitled to payment which has not been made shall give the Debtor written notice of such failure. Debtor shall have fifteen (15) days after receipt of such notice to cure the default. If a cure is not made, the creditor shall have all rights available under applicable law to collect the debt or to take possession of collateral securing the debt, without the necessity of seeking relief from the Bankruptcy Court.

**6.2**      Debtor reserves the right, this provision notwithstanding, to propose a plan amendment to cure the default.  Such action shall stay any collection effort until further order of the Bankruptcy Court.

## ARTICLE VII
### *Acceptance or Rejection of the Plan*

**7.1    Impaired Classes to Vote.** Each Holder of an Allowed Claim in an impaired Class shall be entitled to vote separately to accept or reject this Plan unless such Holder is deemed to accept or reject this Plan. ANY BALLOT NOT INDICATING AN ACCEPTANCE OR REJECTION WILL BE DEEMED AN ACCEPTANCE OF THIS PLAN AND ANY HOLDER OF A CLAIM ENTITLED TO VOTE ON THIS PLAN FAILING TO RETURN A BALLOT BY THE VOTING DEADLINE (AS DEFINED IN THE DISCLOSURE STATEMENT) SHALL BE DEEMED TO HAVE VOTED SUCH HOLDER'S CLAIMS TO ACCEPT THE PLAN. Allowed Secured Claims in classes 4 through 7 are impaired and Allowed Nonpriority Unsecured Claims in Class 12 are impaired and are entitled to vote. Allowed Administrative Claims, Allowed Ordinary Course Administrative Claims and Allowed Priority Claims and classes 8 through 11 are unimpaired, are deemed to accept, and are not entitled to vote.

**7.2    Acceptance by Class of Creditors and Holders of Interests.**  An impaired Class of Holders of Claims shall have accepted this Plan if this Plan is accepted by at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims of such Class that have voted to accept or reject this Plan. A Class of Holders of Claims shall be deemed to accept this Plan in the event that no Holder of a Claim within that Class submits a Ballot by the Ballot Date.

**7.3     Cramdown.**   If any impaired Class of Claims entitled to vote shall not accept this Plan by the requisite statutory majorities provided in §1126(c) of the Bankruptcy Code, Debtor reserve the right to request that the Bankruptcy Court confirm this Plan under §ll29(b) of the Bankruptcy Code.   With respect to impaired Classes of Claims that are deemed to reject this Plan, Debtor shall request the Bankruptcy Court to confirm this Plan under §l 129(b) of the Bankruptcy Code.

### ARTICLE VIII
### *Miscellaneous*

**8.1     Headings.**   The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the meaning thereof.

**8.2     Section and Article Reference.**   Unless otherwise specified, all references in the Plan to sections and articles are to sections and articles of the Plan.

**8.3     Severability.**   Should the Bankruptcy Court determine, prior to the Confirmation Date, that any provision in the Plan is either illegal on its face or as applied to any Claim, or that any provision in the Plan violates the provisions of§ 1123 of the Bankruptcy Code, such provision shall be unenforceable as to the Holder of any Allowed Claim as to which the provision is illegal or unauthorized.   Such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan or the power of the Bankruptcy Court, without further notice or hearing, to confirm the Plan with any provision the Bankruptcy Court has determined to be unenforceable deleted.

**8.4     Quarterly Fees to the United States Trustee.**   Debtor shall pay all quarterly fees payable to the Office of the United States Trustee for Debtor after Confirmation consistent with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and 28 U.S.C. §1930(a)(6).

**8.5     Method of Payment.**   Payments of cash required to be made under the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank at the election of the person making such payment. Whenever any payment or distribution to be made under the Plan is due on a day other than a Business Day, such payment or distribution may instead be made, without interest, on the immediately following Business Day.

**8.6     Successors and Assigns.**   The rights, benefits and obligations of any Person or Holder named or referred to in the Plan will be binding upon, and will inure to the benefit of, the

heirs, executors, administrators, successors and assigns of such Person or Holder.

## ARTICLE IX
### *Retention of Jurisdiction*

**9.1    Jurisdiction.**    Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court retains such jurisdiction over the Chapter 11 case on and after the Effective Date as is legally permissible, including, without limitation, jurisdiction:

(a)    to allow, disallow, determine, liquidate, classify, estimate, or establish the amount or priority or secured or unsecured status of any Claim, including the resolution of any  request for payment of any Administrative Claim and the resolution of any and all objections to   the allowance or priority of Claims;

(b)    to adjudicate all claims as to ownership interest in any property of the Debtor or of this Estate and of any proceeds thereof;

(c)    to adjudicate all claims or controversies arising out of any purchase, sale or contract made or undertaken by the Debtor during the pendency of this Chapter 11 proceeding;

(d)    to determine the validity, extent and priority of all liens against property of the Debtor Estate;

(e)    to determine the value of the property securing any Claim;

(f)    to grant or deny any applications for allowance of compensation or reimbursement of expenses authorized under the Bankruptcy Code or the plan;

(g)    to resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which Debtor is parties and to hear, determine, and if necessary, liquidate, any Claims arising from or cure amounts related to such assumption or rejection;

(h)    to decide or resolve any motions, adversary proceedings or contested matters, and to grant or deny any applications or motions involving Debtor that may be pending on the Effective Date;

(i)    to resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or the obligations of any Holder or Person incurred in connection with the Plan;

(j)     to consider and approve any modification of the Plan under §1127 of the Bankruptcy Code or under Bankruptcy Rule 3019 and/or any modification of the Plan after substantial consummation as defined in §1101(2) of the Bankruptcy Code;

(k)     to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to prevent interference by any entity with consummation or enforcement of the Plan, and any transactions related thereto, except as otherwise provided in the Plan;

(l)     to hear and determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order except as otherwise provided in the Plan;

(m)     to adjudicate all causes of action or claims of Debtor;

(n)     to approve settlements of any cause of action or claim of Debtor;

(o)     to resolve any disputes between   Professionals and   Debtor in accordance with Section 3.8;

(p)     to hear and determine such matters and make such orders consistent with the Plan as may be necessary or desirable to interpret, enforce and carry out the provisions thereof; and

(q)     to enter an order closing the Chapter 11 case.


*Dated at Kansas City, Missouri this 31st day of January, 2019.*


**Lakeshore Farms Inc.,**


**By:** */s/ Jon Russell* _____
                        **Jon Russell, Member**


**BERMAN, DeLEVE, KUCHAN & CHAPMAN, LLC**

**By:** */s/ Ronald S. Weiss* _____
     Ronald S. Weiss     MO #21215

Joel Pelofsky          MO #17929
2850 City Center Square
1100 Main Street
Kansas City, Missouri 64105
Email:  rweiss@bdkc.com
Email:  jpelofsky@bdkc.com
**ATTORNEYS FOR Lakeshore Farms Inc.,
DEBTOR AND DEBTOR-IN-POSSESSION**