# EXHIBIT E

## AGREEMENT FOR JON RUSSELL TO EXECUTE AND IMPLEMENT LAKESHORE FARMS, INC.'S CONFIRMED CHAPTER 11 PLAN OF REORGANIZATION

This Agreement is entered this ____ day of _____, 2019 by and between Jon Russell, Sarah Russell, Lakeshore Farms, Inc. and Frontier Bank (individually, a "Party" and collectively, the "Parties") for Jon Russell to execute and implement Lakeshore Farms, Inc.'s confirmed chapter 11 plan of reorganization.

## DEFINITIONS

"Russell" means Jon Russell.

"Debtor" collectively, means Lakeshore Farms, Inc. and the reorganized Debtor.

"Bank" means Frontier Bank *fka* Richardson County Bank & Trust Company.

"Bankruptcy Court" means the United States Bankruptcy Court for the Western District of Missouri in which the Debtor filed for relief in the case captioned *In re Lakeshore Farms, Inc., Debtor*, Case Non. 18-50077.

"Disclosure Statement" means the chapter 11 disclosure statement submitted by the Debtor to the Court, together with the Debtor's financial projections, which is approved by the Bankruptcy Court.

"Plan" means the chapter 11 plan of reorganization that is confirmed by a final and non-appealable order of the Bankruptcy Court.

"New Value" means the funds that Russell and/or Sarah Russell expect to receive in annual Farm Service Agency subsidy payments, which Russell and Sarah Russell have agreed under the terms of this Agreement and through the Plan to give each year to the Debtor in order that the Debtor may pay its operating expenses and make its payments to creditors as and when required under the terms of the Plan.

"Lease Agreement" means the equipment lease agreement between the Debtor, as lessor, and Russell, as lessee, which is more fully described Exhibit_ attached to and incorporated as

part of the Disclosure Statement.

"Lakeshore Equipment" means the equipment owned by the Debtor which is the subject of and described more particularly in the Lease Agreement.

"Loan Documents" means those loan documents that are more fully described in Exhibit ___ attached to and incorporated as part of the Disclosure Statement.

## RECITALS

On February 28, 2018 the Debtor filed a Chapter 11 Reorganization Proceeding pursuant to Title 11 of the United States Code;

On December 18, 2018 the Debtor filed a Plan of Reorganization and Disclosure Statement;

Under the Loan Documents, the Bank has a duly perfected first lien on all of the Debtor's assets, except for the Debtor's 2018 and subsequent years' crops and the proceeds resulting from the sale of such crops, in which the Bank holds a perfected junior lien;

All revenues generated from the farming operations contemplated under the Plan and corresponding accounts receivable constitute the Bank's cash collateral as defined by 11 U.S.C. § 363(a) of the United States Bankruptcy Code;

Pursuant to the terms of the Plan, the Bank has an allowed secured claim in the amount of $1,300,000.00 and an allowed unsecured claim in the amount of $1,333,748.93, which claims shall be treated by the Debtor pursuant to the terms of the Plan;

Pursuant to the terms of the Plan, Russell, individually, shall execute and implement the Plan, subject to the terms and conditions of this Agreement; and

Russell, individually, has agreed to enter into this Agreement specifically to enable the Debtor to pay its operating expenses and make its payments to creditors as and when required under the terms of the Plan.

**NOW THEREFORE,** in consideration of the mutual covenants between and among the Parties, the sufficiency of which is hereby acknowledged by the Parties, it is hereby stipulated and agreed as follows:

1. Recitals. The above Definitions and Recitals shall have the same force and effect as if set forth in full in the body of this Agreement.

2. Bank Account/Revenues From Farm Operations. During the term of the Plan, Russell, as an individual, shall establish and maintain a bank account at a financial institution that is insured

    by the FDIC up to the insurable limit of the FDIC, in his name alone, in which all revenues from the farm operations contemplated under the Plan shall be deposited and from which all expenses for such operations shall be paid (the "Bank Account"). No funds from sources other than such farm operations shall be deposited with or otherwise comingled with the revenues from the farm operations.

3. <u>Russell Loan Documents</u>. Contemporaneous with Russell's and Sarah Russell's execution of this Agreement, Russell and Sarah Russell shall execute and deliver to the Bank such loan documents, instruments, and agreements as are necessary to give the Bank: (a) a first priority lien against the Bank Account; (b) certain control over the Bank Account through a deposit account control agreement; (c) assignment of crop insurance claims subject only to the prior interest under the ARM Loan (described below); (d) a leasehold deed of trust on Russell's interest in the land leasehold interest as a tenant under the Farm Land Leases (further described below); and (e) a security interest in the crops growing on the farm land leased under the Farm Land Leases subject only to the first priority security interest under the ARM Loan (described below). The form of such documents, instruments, and agreements are collectively attached hereto as <u>Exhibit 1</u>.

4. <u>Russell's Required New Value Contributions</u>.

 Russell and/or Sarah Russell shall make New Value contributions to the Debtor in amounts sufficient to make all payments under the Lakeshore Plan which Russell and/or Sarah Russell project to be in the approximate amounts of the New Value contributions detailed in Exhibit B2 of the Debtor's Disclosure Statement

    a. .

 The New Value contributions shall come from the Farm Service Agency subsidy payments received by Russell and/or Sarah Russell and or other sources as needed.

    b. Within ten (10) days after Russell's receipt of each Farm Service Agency subsidy payment, Russell and Sarah Russell, as applicable, shall submit a report to the Bank showing the amount of such payment and include any corresponding statements or other documents concerning such payment.

5. <u>Post-Confirmation Loan</u>. Russell, individually, shall obtain a loan from Agrifund, LLC and its participating distributor, Agri-Next 3F Farms (the "Arm Loan") at such intervals and in such amounts that are sufficient for Russell to remit payments to the Debtor in order that the Debtor may pay its operating expenses and also timely and fully make payments to creditors as and when provided for under the terms of the Plan.

6. <u>Farm Land Leases</u>. During the term of the Plan, Russell shall, as an individual, enter into

and renew as necessary land leases to lease all of the farm land that was previously leased by

the Debtor under land leases signed by the Debtor in 2018, which leases are generally described in Section VI of the Disclosure Statement (the "Farm Land Leases").

7. <u>Guaranty of Plan Payment Shortfalls</u>. Russell and Sarah Russell absolutely and unconditionally, jointly and severally, guaranty full and punctual payment of the payments to be made to the Bank as and when provided under the terms of the Plan.

8. <u>Taxes</u>. Russell and Sarah Russell shall remain current on all applicable federal, state, and local taxes and file all tax returns on a timely basis.

9. <u>Crop Insurance</u>. During the term of the Plan, Russell shall maintain and keep in force crop insurance on all crops of the farm operations on the same terms and conditions and for the same coverage amounts that the Debtor maintained and had in force at the time the Plan was confirmed.

10. <u>Russell Personal Financial Statements</u>. Russell agrees to provide the Bank with a personal financial statement in a form acceptable to the Bank within ten (10) business days after June 1 and December 31 of each calendar year, for the prior six month period, that detail the income and expenses of Russell's farming operation. Such personal financial statements shall include, at a minimum, an income statement, balance sheet, and sources and uses of funds statement. Russell shall produce with such personal bank statements the bank statements for the Bank Account for the corresponding reporting period.

    Such personal financial statements and bank statements shall be provided to the Bank until all payments to be made to the Bank under the Plan have been paid in full.

11. <u>Incorporation Into Plan; Bankruptcy Court Approval</u>. This Agreement shall be attached as an exhibit to and incorporated as part of the Plan. This Agreement is subject to Bankruptcy Court approval.

12. <u>Remedy Upon Default</u>. In the event of a default of any provision of this Agreement, the Bank shall give Russell written notice of such default. Russell shall have fifteen (15) days after receipt of such notice to fully cure the default. If such cure is not timely made, the Bank shall have all rights available under applicable law to enforce its rights under the Loan Documents, including, but not limited to, collection of the underlying debt and possession of the collateral securing the debt, without the necessity of seeking relief from the Bankruptcy Court.

13. <u>The Loan Documents</u>. Nothing contained in this Agreement shall act as a waiver, release or otherwise modify any provision of the Loan Documents.

14. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between and among the Parties concerning the subject matter hereof, and there are no other understandings, representations or agreements, oral or otherwise, concerning the Agreement except as expressly set forth in writing herein.

15. <u>Bankruptcy Court Jurisdiction</u>. Each of the Parties hereby irrevocably consents to the jurisdiction of the Bankruptcy Court with respect to any action to approve or enforce the terms and provisions of this Agreement and expressly waives any right to commence any action in any other forum or to contest the jurisdiction of the Bankruptcy Court.

16. <u>Notices</u>. All notices and other communications under this Agreement shall be in writing and shall be deemed duly given: (a) when delivered if personally delivered to the recipient; (b) when transmitted by telecopier or facsimile device during normal business hours, provided such device is capable of generating a written confirmation of such transmission and receipt and an original is deposited in first class mail within two (2) business days thereafter addressed as set forth below; (c) on the first business day following deposit to an overnight delivery service, provided delivery is confirmed by the delivery service; or (d) on the earlier of actual receipt or three (3) days following deposit in United States registered or certified mail, postage prepaid and return receipt requested, addressed to the parties as set forth below. Any Party may change their address for notices by giving written notice to the other Parties in the manner set forth above.

 If to Jon Russell:  Jon Russell
 _____
 _____
 _____

 If to Sarah Russell:  Sarah Russell
 _____
 _____
 _____

 If to Lakeshore Farms, Inc.  _____
 _____
 _____

 If to the Bank:  Doug Ayer
 17002 Marcy Street, Suite 120
 Omaha, Nebraska 68118

dayer@frontbank.com

   With a copy to:  Levy Craig Law Firm
            4520 Main Street, Suite 1600
            Kansas City, Missouri 64111
            Attn: Michael M. Tamburini
              mtamburini@levycraig.com

17. <u>No Joint Venture</u>. This Agreement shall not be deemed to create any joint venture or partnership between or among the Parties or to render the Parties joint venturers or partners.

18. <u>Interpretation</u>. Section headings in this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of any provision of this Agreement.

19. <u>Waiver</u>. No waiver of any provision of this Agreement shall be binding unless executed in writing by the party making the waiver. No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver unless the written waiver so specifies.

20. <u>Time</u>. Time is of the essence for this Agreement. All references in this Agreement to "days" shall mean calendar days unless expressly referred to as "business days." If the day for performance of any obligation under this Agreement is a Saturday, Sunday or legal holiday, then the time for performance of that obligation shall be extended to the first following day that is not a Saturday, Sunday or legal holiday.

21. <u>Amendments; Modification; Waiver</u>. This Agreement may not be modified, superseded, extended, terminated or amended and no provision hereto may be waived except by a writing signed by the Parties.

22. <u>Severability</u>. The provisions of this Agreement shall be deemed severable, and the invalidity or unenforceability of any provision shall not affect the validity or enforceability of the remaining provisions of the Agreement, except as provided herein. If any provision of the Agreement is invalid or unenforceable, a suitable and equitable provision shall be substituted in order to accomplish the intent and purpose of the invalid or unenforceable provision.

23. <u>Terms Read and Understood</u>. The signatories to this Agreement certify that they have read this Agreement, have conferred with counsel and fully understand all of the terms, and the Parties acknowledge and represent that they enter into this Agreement of their own free will, and not from any representation, commitment, promise, pressure or duress from any other party.

24. <u>Authorization</u>. The person who executes this Agreement by or on behalf of each respective Party warrants and represents that she or he has been duly authorized and empowered to execute and deliver this Agreement on behalf of such Party.

25. <u>Relationship</u>. Russell and the Bank are independent contracting parties. Nothing contained in this Agreement will create a partnership, joint venture, fiduciary, or employment relationship between Russell and the Bank. Neither Russell or the Bank have the power or authority to act on behalf of the other or in the other's name directly or indirectly in any manner. The Bank will not be responsible for any debts, liabilities, or obligations Russell contracts or incurs in carrying out Russell's farming operations.

26. <u>Plan Confirmation Order</u>; Conflict. No provision of this Agreement shall constitute or be deemed to waive, amend or otherwise modify any provision of the Order of the Bankruptcy Court confirming the Plan.

27. <u>Signatures</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile, pdf, and/or electronic signatures shall be treated in all manner and respects as a binding and original document, and the signature of any Party shall be considered for these purposes as an original signature.

28. <u>Anti-Assignment</u>. Neither this Agreement nor any of the rights, interests or obligations under the Agreement shall be assigned, in whole or in part, by operation of law or otherwise by any Party without the prior written consent of all of the Parties. Such assignment or transfer, if any, shall not relieve Russell of his obligations under this Agreement in the event that the assignee or transferee should default under this Agreement.

29. <u>Binding Effect</u>. Unless otherwise expressly provided herein, the terms and acknowledgements set forth in this Agreement shall be binding upon the Parties and shall inure to the benefit of the Parties, and their respective successors, assigns, heirs, executors, administrators and representatives.

30. <u>Effective Date</u>. This Agreement shall not be effective unless and until it is executed and delivered by all of the Parties. Subject to the preceding sentence, this Agreement shall become effective on the date upon which an order of the Bankruptcy Court confirming the Debtor's Plan becomes final and non-appealable.

*[Remainder of Page Left Intentionally Blank]*

**IN WITNESS WHEREOF**, and intending to be legally bound hereby, the Parties hereto have executed the Agreement on the date set forth below.

LAKESHORE FARMS, INC.

By: _____          Date: _____
    Jon Russell, President

_____          Date: _____
    Jon Russell, individually

_____          Date: _____
    Sarah Russell, individually

FRONTIER BANK

By: _____          Date: _____
_____